# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DEBORAH G. MALLOW IRA SEP INVESTMENT PLAN, individually and derivatively on behalf of CHESAPEAKE ENERGY CORPORATION, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-12-436-M |
| AUBREY K. MCCLENDON, et al., | ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| CHESAPEAKE ENERGY CORPORATION, | ) ) ) | |
| Nominal Defendant. | ) | |
| | | |
| CHRISTOPHER SNYDER, individually and derivatively on behalf of CHESAPEAKE ENERGY CORPORATION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-12-437-M |
| AUBREY K. MCCLENDON, et al., | ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| CHESAPEAKE ENERGY CORPORATION, | ) ) ) | |
| Nominal Defendant. | ) | |

| | | |
|---|---|---|
| DOLEZAL FAMILY LIMITED PARTNERSHIP, derivatively on behalf of Nominal Defendant CHESAPEAKE ENERGY CORPORATION, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-12-477-M |
| AUBREY K. MCCLENDON, et al., | ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| CHESAPEAKE ENERGY CORPORATION, | ) ) ) | |
| Nominal Defendant. | ) | |
| | | |
| BRIAN F. LEONARD, individually and derivatively on behalf of CHESAPEAKE ENERGY CORPORATION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-12-479-M |
| AUBREY K. MCCLENDON, et al., | ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| CHESAPEAKE ENERGY CORPORATION, | ) ) ) | |
| Nominal Defendant. | ) | |

| | |
|---|---|
| THE DAVID A. KROLL, INC. EMPLOYEES' PROFIT-SHARING PLAN AND TRUST, derivatively on behalf of CHESAPEAKE ENERGY CORPORATION, ) ) ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. CIV-12-493-M |
| AUBREY K. MCCLENDON, et al., ) ) | |
| Defendants, ) ) | |
| and ) ) | |
| CHESAPEAKE ENERGY CORPORATION, ) ) ) | |
| Nominal Defendant. ) | |

| | |
|---|---|
| NORMAN SPIEGEL, derivatively on behalf of Nominal Defendant CHESAPEAKE ENERGY CORPORATION, ) ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. CIV-12-502-M |
| AUBREY K. MCCLENDON, et al., ) ) | |
| Defendants, ) ) | |
| and ) ) | |
| CHESAPEAKE ENERGY CORPORATION, ) ) ) | |
| Nominal Defendant. ) | |

**ORDER**

Before the Court are plaintiffs Deborah G. Mallow IRA SEP Investment Plan, Christopher Snyder, Dolezal Family Limited Partnership, Brian F. Leonard, David A. Kroll, Inc. Employees' Profit-Sharing Plan and Trust, and Norman Spiegel's (collectively "Plaintiffs") Motions for Preliminary Injunction. Defendants have filed their response, and Plaintiffs have filed their reply. On June 5, 2012, the Court conducted a hearing on Plaintiffs' motions.

I.   Background

Nominal Defendant Chesapeake Energy Corporation ("Chesapeake") is one of the largest independent natural gas producers in the United States. Chesapeake focuses on the discovery, acquisition, and development of natural gas reserves onshore in the United States, east of the Rocky Mountains. Defendant Aubrey K. McClendon ("McClendon") co-founded Chesapeake in 1989.

In June 2005, Chesapeake's shareholders voted to approve the Founder Well Participation Program ("FWPP"). Under the FWPP, McClendon has the right to purchase up to a 2.5% interest in new wells drilled by Chesapeake during each calendar year. Further, under the FWPP, McClendon must invest in all of the wells drilled by Chesapeake during each calendar year or none of them and must pay his proportionate share of all costs and expenditures related to his FWPP interests to Chesapeake promptly and in full.

On April 18, 2012, *Reuters* published an article entitled "Chesapeake CEO Took Out $1.1 Billion in Unreported Loans" which revealed that McClendon has borrowed as much as $1.1 billion over the last three years against his personal interests in Chesapeake wells and that these loans were used to finance McClendon's obligations under the FWPP. McClendon obtained these loans from, among others, the private equity firm, EIG Global Energy Partners, a company that has a myriad of

business dealings with Chesapeake. On this news, Chesapeake's stock declined over 5.5% in one day.

Since then, numerous news articles have been published regarding McClendon's financial transactions and other activities. As a result of these news reports, numerous shareholder derivative lawsuits, including the instant actions, were filed seeking to address alleged material disclosure violations. The complaints variously allege violations of Section 14(A) of the Securities Exchange Act of 1934 (the "Exchange Act"), SEC Rule 14a-9, and state law.

On April 20, 2012, Chesapeake filed a preliminary proxy that provided additional information regarding McClendon's FWPP interests and financing transactions. After the news reports, the Securities and Exchange Commission ("SEC") notified Chesapeake that it would conduct a review of the proxy. Upon completion of the SEC review, Chesapeake finalized the proxy and issued it to shareholders on May 11, 2012. The 2012 Proxy seeks shareholder approval on a number of voting items, including (1) the re-election of defendant Richard K. Davidson ("Davidson") and defendant V. Burns Hargis ("Hargis") as directors; (2) an amendment to the Long Term Incentive Plan ("LTIP")[1] which would increase the number of shares of common stock available for award under the LTIP; and (3) the Annual Incentive Plan, Chesapeake's new cash-based bonus program that uses pre-established performance goals to determine bonuses.[2]

---

[1] The LTIP is an equity-based incentive compensation plan that grants restricted stock to employees upon joining Chesapeake and semi-annually thereafter.

[2] In their motions, Plaintiffs also allege that the say-on-pay vote on executive compensation, a purely advisory vote, was one of the voting items upon which the alleged improper disclosures impacted the shareholders' right to be fully informed before they vote. At the hearing, however, Plaintiffs no longer referenced the say-on-pay vote on executive compensation as one of the voting items impacted by the lack of disclosure for purposes of the motions for preliminary injunction.

Plaintiffs assert that defendants failed to disclose material information necessary to allow Chesapeake shareholders to cast a fully informed vote at Chesapeake's annual meeting of shareholders scheduled for June 8, 2012 and move this Court to enjoin the annual meeting. Plaintiffs specifically request the injunction to last until Chesapeake discloses all of the information that plaintiffs assert is material for an informed vote at the annual meeting.

II.   Discussion

A movant seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (internal citation omitted). Whether to grant a preliminary injunction rests within the sound discretion of the trial court. *See United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999).

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995).

> Determining whether irreparable harm exists can be a difficult and close question. We have noted that [t]he concept of irreparable harm . . . does not readily lend itself to definition, nor is it an easy burden to fulfill. In defining the contours of irreparable harm, case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial.

*Id.* at 1262 (internal quotations and citations omitted).

6

Further, specifically in relation to injunctive relief based upon alleged violations of the Exchange Act,

> [t]he Supreme Court has recognized that "use of solicitation which is materially misleading poses the kind of irreparable injury to stockholders which can justify injunctive relief prior to a shareholder's meeting." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 383, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970). However, five years after the Supreme Court decided *Mills*, it held that *Mills* did not stand for the proposition that mere violation of the Exchange Act establishes irreparable harm. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 64-65, 95 S.Ct. 2069, 2078-79, 45 L.Ed.2d 12 (1975). Instead, the Court held that courts must judge an application for injunctive relief according to traditional equitable principles which require a separate showing of irreparable harm. *Id.* Defendant thus cannot prove irreparable harm merely by showing a material false solicitation.

*Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1149-50 (D. Kan. 2001).

Based upon the testimony and evidence presented at the hearing, the Court finds Plaintiffs have not met their burden of showing irreparable injury if the injunction is denied. Specifically, the Court finds that Plaintiffs do have an adequate remedy if the injunction is denied. If this Court were ultimately to conclude that defendants failed to disclose material information in the 2012 Proxy, the Court can void the shareholders' vote on the voting items related to that material information and order that those voting items be resubmitted to the shareholders. *See Bolger v. First State Fin. Servs.*, 759 F. Supp. 182, 191 (D.N.J. 1991) ("Courts may void elections which were not based on fair disclosure and order new elections to be held."); *FMC Corp. v. R. P. Scherer Corp.*, 545 F. Supp. 318, 322 (D. Del. 1982) ("Thus, if the Court were ultimately to conclude that FMC were correct in its contentions regarding Scherer's proxy statement the Court could void the stockholder vote and order that the proposed amendments be resubmitted for stockholder approval."); *Clairdale Enters., Inc. v. C. I. Realty Investors*, 423 F. Supp. 261, 264 (S.D.N.Y. 1976) (finding that if plaintiff

demonstrates proxy violations, results of annual meeting may be set aside, proxies re-solicited, and new vote held); *Sherman v. Posner*, 266 F. Supp. 871, 873-74 (S.D.N.Y. 1966) (finding that if plaintiff ultimately demonstrates proxy violations, vote may be set aside and re-solicitation may be had with new vote held); *Mack v. Mishkin*, 172 F. Supp. 885, 889 (S.D.N.Y. 1959) ("However, if after a full hearing the Court determines that proxies were unlawfully obtained and utilized, the election may be set aside and a re-solicitation of proxies with full disclosure and a new election thereon may be had.").

Further, it is important to note what this case does not involve. Plaintiffs are not attempting to enjoin a merger or other corporate activity which would require the Court to "unscramble the eggs" if preliminary injunctive relief were erroneously withheld. As set forth above, the voting items at issue do not involve complex business transactions and if Plaintiffs ultimately demonstrate proxy violations, the Court can void the shareholders' vote on the voting items related to that material information and order that those voting items be resubmitted to the shareholders. Additionally, it must be noted that the re-election of Davidson and Hargis is not contested, which presents a further obstacle to any finding of irreparable harm.

Finally, while the Court is fully aware that the action of the SEC is in no way binding on this Court,[3] the Court believes some weight should be given to the SEC's review and clearance of the 2012 Proxy when deciding this matter. *See McConnell v. Lucht*, 320 F. Supp. 1162, 1166 (S.D.N.Y.

---

[3]Rule 14a-9(b) provides that "the fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made."

1970) ("the fact that the proxy material passed muster before the SEC – while not a ruling on the merits of the statements – is of some importance on the issue of injunctive relief"); *Sherman v. Posner*, 266 F. Supp. 871, 874 (S.D.N.Y. 1966) ("It is submitted that the action, or inaction, as the case may be, of the Commission is to be accorded some weight where, as in our case, the information which forms the basis for an injunctive motion previously has been brought to the attention of the Commission and the Commission has presumably approved issuance of the material."); *Mack v. Mishkin*, 172 F. Supp. 885, 888 (S.D.N.Y. 1959) (finding SEC's approval of issuance of material must be given some weight). "In an area where the primary power of protection of investors is vested in the Commission, their failure to take a stronger position is of some weight, particularly on a motion of this sort for preliminary relief." *Sherman*, 266 F. Supp. at 874 (internal quotations and citations omitted).

The Court, therefore, finds that Plaintiffs' motions for a preliminary injunction should be denied.[4]

III. Conclusion

For the reasons set forth above, the Court DENIES plaintiff Deborah G. Mallow IRA SEP Investment Plan's Motion for Preliminary Injunction [docket no. 18 in Case No. CIV-12-436-M], plaintiff Christopher Snyder's Motion for Preliminary Injunction [docket no. 19 in Case No. CIV-12-437-M], plaintiff Dolezal Family Limited Partnership's Motion for Preliminary Injunction [docket no. 11 in Case No. CIV-12-477-M], plaintiff Brian F. Leonard's Motion for Preliminary Injunction [docket no. 15 in Case No. CIV-12-479-M], plaintiff David A. Kroll Inc., Employees'

---

[4] Because all four requirements for a preliminary injunction must be satisfied, and because the Court finds Plaintiffs have failed to satisfy the irreparable injury requirement, the Court declines to address the remaining three requirements.

Profit-Sharing Plan and Trust's Motion for Preliminary Injunction [docket no. 7 in Case No. CIV-12-493-M], and plaintiff Norman Spiegel's Motion for Preliminary Injunction [docket no. 6 in Case No. CIV-12-502-M].

**IT IS SO ORDERED this 6th day of June, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE